UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SKYLER S. POTTER,

        Plaintiff,

v.
                               Case No. 1:14-cv-293
                               Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on December 17, 1981 (AR 182).[1]  He alleged a disability onset date of January 1, 2009 (AR 182).  Plaintiff completed the 11th grade with special training in vocational auto shop (AR 187).  He had previous employment as a cook, industrial truck operator, material handler, production assembler, and a truck driver  (AR 20, 187).  Plaintiff identified his disabling conditions as severe ulcerative colitis and bone infarction, arthritis, back pain and severe lower body pain (AR 186).  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on January 10, 2013 (AR 13-22).  The ALJ's decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2009 and that he met the insured status requirements of the Act through June 30, 2015 (AR 15). At the second step, the ALJ found that plaintiff had severe impairments of degenerative condition of the right knee due to steroid use and ulcerative colitis (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16). Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint) or 5.06 (inflammatory bowel disease) (AR 16).

The ALJ decided at the fourth step:

> [T]hat the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work around unprotected heights or moving mechanical parts. The claimant can have no exposure to humidity, wetness, atmospheric conditions, weather, cold or heat.

(AR 16). The ALJ also found that plaintiff was unable to perform his past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 21). Specifically, plaintiff could perform the following work in the State of Michigan: a cashier (26,000 jobs); a marker (4,500 jobs); and a cleaner (8,500 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff has not been under  a

disability, as defined in the Social Security Act, from January 1, 2009 (the alleged onset date) through January 10, 2013 (the date of the decision) (AR 21-22).

### III.  ANALYSIS

Plaintiff raised two issues on appeal:

**A.     The ALJ failed to give controlling weight to the opinion of plaintiff's treating physician, which was supported by substantial evidence.**

Plaintiff contends that the ALJ failed to give controlling weight to the opinions expressed by his treating physician, Michael Manbeck, M.D.  A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ evaluated Dr. Manbeck's opinions as follows:

> The claimant's treating provider, Dr. Manbeck, opined in May 2009 that it would be best for the claimant to not seek employment at this time (Exhibit 8F/4). I give little weight to the opinion of Dr. Manbeck, as it is inconsistent with the record.  I also note that a finding of disability is reserved to the Commissioner pursuant to the Regulations.  Specifically, the claimant stated at his appointment in April 2009 that he felt significantly better since his hospital stay with only mild abdominal discomfort (Exhibit 6F/17).  At his visit in June 2009, the claimant then noted that he had only 1-2 stools a day and that he felt okay (Exhibit 6F/14).  Dr. Manbeck then indicated in November 2011 that the claimant would likely miss several days of work per month. Dr. Manbeck also found that the claimant could not do any significant work until after his surgery (Exhibit 8F/1).  I give little weight to the opinion of Dr. Manbeck, as it is inconsistent with the record.  In particular, the claimant stated at his prior appointment in September 2011 that the Remicade helped (Exhibit 8F/3).  The claimant then indicated in February 2012 that the treatment was good and that he used only a little bit of prednisone (Exhibit 9F/2).  In May 2012, the claimant stated that he had diarrhea and abdominal pain only once a week (Exhibit 9F/1).

(AR 20).

Plaintiff contends that the while the ALJ traced plaintiff's medical history (AR 17-19), the ALJ focused on evidence that supported the decision to deny benefits.  Plaintiff contends

that "[t]he records if taken as a whole support Dr. Manbeck's position that [plaintiff] suffers from severe ulcerative colitis that is difficult to control and would cause him to be absent several times per month or even per week due to his frequent flare ups" and that "in looking at the record as a whole, [plaintiff] has never had an entire year where he did not have a significant flare up that required increased medication to get him back to functioning level. (Tr. 292, 294-95, 297, 300-02, 305, 308, 311, 330-31, 334-35)." Plaintiff's Brief at p. ID# 395.

As an initial matter, to the extent that Dr. Manbeck opined that plaintiff was disabled, e.g., the May 9, 2009 letter to Medicaid stating that "it is not in [plaintiff's] best interest to seek employment at this time" and "[i]t is difficult for him to hold down a job at this point in time because of his symptoms related to his ulcerative colitis" (AR 333), such opinions, even by a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ); *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

However, the Court concludes that the ALJ's decision did not articulate good reasons for the weight assigned to Dr. Manbeck's opinions. The record reflects that plaintiff had an extensive treatment relationship with Dr. Manbeck. On March 2, 2009, plaintiff reported to the doctor that he was having one to two stools a day with occasional bleeding and stomach pain (AR 310). The doctor planned to continue prednisone and wean plaintiff from the sulfasalazine (AR 310). On April 13, 2009, plaintiff reported four or five stools a day, with occasional mild abdominal

7

discomfort, and minimal to no bleeding (AR 308).  Plaintiff referred to his condition as "okay" (AR 308).    On May 12, 2009, the doctor stated that "[h]e has had very severe, difficult to control ulcerative colitis . . . [h]e needs to get his ulcerative colitis under control" (AR 333).  Plaintiff did not provide an opinion on the colitis for almost two years after that date.  On June 29, 2009, plaintiff reported one to two loose stools in the morning, reported that he was doing okay, and discussed using additional medication to help control his symptoms (AR 305).  On August 28, 2009, plaintiff reported that things were "a little bit better," although he was having some trouble with rectal bleeding, abdominal pain, cramping and diarrhea (AR 302).   The doctor noted that plaintiff's condition "has been very difficulty [sic] to control" (AR 302).  On October 26, 2009, plaintiff was doing "significantly better," but still reporting one to two stools per day, rare episodes of bleeding and that his condition is still a problem "[m]aybe one day a week" (AR 301).

On January 12, 2010 plaintiff had stools two times a day, experienced urgency while on prednisone, and was feeling 85-90% better (AR 300).  On March 16, 2010, plaintiff had a recent flare up of colitis, required 30 mg of prednisone, and his stools went back down to once a day without bleeding (AR 297).  On May 24, 2010, plaintiff was doing pretty well and down to two stools a day; however, he had strep throat and "has backed off" of the Imuran and prednisone (AR 296).  On August 23, 2010, plaintiff had four to five loose per day, and required renal surgery  the next month for a tumor (AR 295).  At that time, Dr. Manbeck advised plaintiff to tell the surgeon that he has been on "some chronic steroids" (AR 295).  On November 23, 2010, plaintiff reported that his surgery was okay, that it "messed up" his bowels, but that things were "pretty well stable" since he resumed the steroids (AR 294).

8

On March 7, 2011, Dr. Manbeck stated that plaintiff was "steroid dependent" and "[c]ontinuing to use steroids to keep his bowels working comfortably" (AR 292).  On September 28, 2011, after noting that plaintiff was better on Remicade, the doctor recommended "observation at this point in time" but "did discuss with [plaintiff] and his wife if he is not better he may be forced to proceed with a colectomy for his colitis" (AR 332).  On October 28, 2011, the doctor noted that plaintiff continued to have "significant abdominal complaints," and while plaintiff's "condition really is stable to maybe slightly a little bit better . . . [i]t is definitely not significantly better and he may be actually approaching surgical options for his ulcerative colitis" (AR 331).

On November 18, 2011, Dr. Manbeck opined that:

> [Plaintiff] has ulcerative colitis.  Currently it is causing him to miss several days a month.  He is failing medical therapy. If he has a total colectomy for his ulcerative colitis he will then likely be able to return to work.  Currently . . . I am having a difficult time controlling it with medications.  He will likely need to see a surgeon in the future to discuss surgical options for his ulcerative colitis.  Once he has surgery for his ulcerative colitis he should be able to return to work.  Currently, he is likely going to miss several days a month, maybe even a couple of days a week, with his severe ulcerative colitis symptoms.

(AR 330).

On February 7, 2012, the doctor noted that plaintiff's condition had improved:

> This is a 30-year-old male with ulcerative colitis.  He is doing Remicade, azathioprine, Apriso. and prednisone intermittently.  He has about three bowel movements per week. Sometimes rare [sic] blood but not much pain, once in a great while.  His colitis is doing fairly well.  He has not taken prednisone in a while, partly because he is out.

> \*       \*       \*

> Weight is 237 pounds, up from 221 pounds when I last saw him in September.

> \*       \*       \*

9

> Ulcerative colitis.  It is better on Remicade, azathioprine. Apriso, and pm prednisone.  Some fairly heavy hitters to try and get his colitis under control.  He is on maximum medical therapy at this point in time.  I did discuss with him and his wife today that they ought to consider an evaluation at the University of Michigan by the G1 department and potentially the surgical department there for a colectomy, simply because of the severity of his inflammatory bowel disease over the last five months and the significant amount of medications that we are using to try and get it under control.  They right now cannot afford getting to the University of Michigan, so we will observe for now.  As far as his prednisone. I gave him some prednisone today to take intermittently.  I did caution him against excessive prednisone use, as far as musculoskeletal bone complaints.  I will get him back to see me here in the office in a few months.  He is to continue his current therapy.  The patient has been instructed to contact me if they have any problems over the next few months, or if they find a way to get up to the University of Michigan and we can arrange a consult for him there.

(AR 335).

However, by May 8, 2012, Dr. Manbeck felt that plaintiff's condition had stabilized to the point where plaintiff only needed a six month checkup:

> This is a 30-year-old male who has had ulcerative colitis for about five years now.  He has been doing well.  Blood, diarrhea, abdominal pain maybe once a week.  He takes a little prednisone now and then, but for the most part has been very happy with the Apriso and azathioprine combination that he is on.

> \*       \*       \*

> His weight is up about 20 pounds since the last time I have seen him.  He says he has lost his job so be has not been doing much.  He has been spending a lot of time at home eating.

> \*       \*       \*

> My plan is to continue him on his current medications.  I have recommended supportive care. . . I will see him back here in the office in six months.  The patient has been instructed to contact me or notify me if I can be of further assistance over that six month period.

(AR 334).

10

Based on this record, the ALJ did not articulate good reasons for assigning "little weight" to Dr. Manbeck's opinions. The opinions appear to follow the arc of plaintiff's lengthy colitis flare up: plaintiff's condition was poor in May 2009; the colitis slowly responded to therapy (in part, due to an intervening surgery); a colectomy was considered as an alternative; and plaintiff's condition eventually stabilized with good results being reported on May 8, 2012. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner will be directed to re-evaluate the opinions issued by Dr. Manbeck between January 1, 2009 and May 8, 2012.

> **B.    The ALJ committed reversible error in failing to properly assess plaintiff's credibility with his need to frequently use the restroom, which would preclude full time competitive employment.**

Plaintiff contends that the ALJ failed to properly address his credibility with respect to the frequency of his bowel movements related to the colitis. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew,

11

resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility with respect to his colitis as follows:

> In forms submitted to the Administration and through the claimant's testimony at the hearing, the claimant alleges that he is unable to work due to ulcerative colitis and right knee pain. The claimant stated that he has very little control over his bowel movements, so he requires breaks because of it. The claimant noted that he has severe diarrhea around 2-3 times a week but that he still goes anywhere from 2-15 times even on a better day. As a result, the claimant stated that he is having accidents on almost a daily basis and takes a spare pair of clothes with him everywhere. The claimant indicated that the doctor wants to take out his colon. The claimant also testified that he vomits at times and that prednisone helps with it. . . The claimant stated that he typically stays in bed every day (Exhibit 3E, Hearing Testimony).

> \*      \*      \*

> The claimant's daily activities, course of treatment, and work history are inconsistent with his allegations of disabling impairments. As for activities of daily living, the claimant testified that he spends the majority of the day in bed at home because of his ulcerative colitis. The claimant stated that he vacuums but otherwise does not do much. The claimant noted that he lives with his girlfriend and her son and that she is currently on disability after having four strokes (Hearing Testimony). In the Function Report, the claimant stated that he took care of his girlfriend because of her disability. The claimant also indicated that he cooked simple meals, vacuumed, and visited with his friends/family at his house (Exhibit 5E). In July 2012, the claimant noted that he had recently been golfing (Exhibit l0F/1-12). As for course of treatment, the claimant testified that he has anywhere from 2 to 15 bowel movements a day and that he suffers from accidents on a daily basis (Hearing Testimony). The record does not support the claimant's allegations. The claimant originally complained of 4 to 5 bowel movements a day right after he had originally been hospitalized (Exhibit 6F/20). By the following visit in March 2009, the claimant stated that he had only 1-2 bowel movements a day with only occasional abdominal pain (Exhibit 6F/19). The claimant noted increased loose stools in April 2009 but reiterated that he felt significantly better since his hospital stay in December 2008 (Exhibit 6F/17). The claimant did have his prednisone increased at times including in August 2009, January 2010, and March 2010 but always noted

improvement by the following visit (Exhibit 6F/6, 9, 11).  By November 2010, the claimant even stated that his condition was stable with only intermittent use of prednisone (Exhibit 6F/3).  Dr. Manbeck indicated in September 2011 that the claimant had started taking Remicade and that it helped (Exhibit 8F/3).  In 2012, the claimant stated to Dr. Manbeck in May that he suffered from diarrhea and abdominal pain once a week but was otherwise doing well (Exhibit 9F/l).  I note that Dr. Manbeck had recommended surgery in November 2011 but that the claimant has still not done it (Exhibit 8F/1, Hearing Testimony). . .  As for work history, the claimant worked in 2010 and 2011 until the fourth quarter despite alleging disability (Exhibit 7D).  The claimant also stated to Dr. Manbeck in May 2012 that he had lost his job but did not indicate that it related to his impairments (Exhibit 9F/1).

(AR 17, 19).

As discussed, the medical records and Dr. Manbeck's opinions reflect that plaintiff was "doing well" by May 8, 2012 with minimal colitis symptoms (i.e., "[b]lood, diarrhea, abdominal pain maybe once a week") (AR 334).  Plaintiff's testimony given at the October 31, 2012 greatly exaggerate the extent of his colitis symptoms as those symptoms were reflected in the medical records and Dr. Manbeck's opinions.  The Court finds no compelling reason to disturb the ALJ's determination that plaintiff's testimony regarding the extent of his colitis symptoms was not credible.  *See Smith*, 307 F.3d at 379.

### IV.  CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-evaluate the opinions issued by Dr. Manbeck between January 1, 2009 and May 8, 2012.  An order consistent with this opinion will be issued forthwith.


Dated:  March 25, 2015                          /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge